# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2017AP850-CR |
| COMPLETE TITLE: | State of Wisconsin, |
| | Plaintiff-Respondent, |
| | v. |
| | Joseph B. Reinwand, |
| | Defendant-Appellant. |

ON CERTIFICATION FROM THE COURT OF APPEALS

| | |
|---|---|
| OPINION FILED: | March 19, 2019 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | January 18, 2019 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Wood |
| JUDGE: | Gregory J. Potter |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | DALLET, J. concurs, joined by ABRAHAMSON, J. and A.W. BRADLEY, J. (opinion filed). |
| DISSENTED: | |
| NOT PARTICIPATING: | |

ATTORNEYS:

For the defendant-appellant, there were briefs filed by *Philip J. Brehm*, Janesville. There was an oral argument by *Philip J. Brehm*.

For the plaintiff-respondent, there was a brief filed by *Sopen B. Shah*, deputy solicitor general, with whom on the brief is *Misha Tseytlin*, solicitor general, and *Brad D. Schimel*, attorney general. There was an oral argument by *Amy Catherine Miller*, assistant solicitor general.

2019 WI 25

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2017AP850-CR
(L.C. No. 2013CF196B)

STATE OF WISCONSIN            :        IN SUPREME COURT

**State of Wisconsin,**

      **Plaintiff-Respondent,**

      **v.**

**Joseph B. Reinwand,**

      **Defendant-Appellant.**

**FILED**

**MAR 19, 2019**

Sheila T. Reiff
Clerk of Supreme Court

APPEAL from an order of the Circuit Court for Wood County. *Affirmed.*

¶1 PATIENCE DRAKE ROGGENSACK, C.J. This appeal comes before us on certification from the court of appeals.[1] On October 30, 2014, Joseph B. Reinwand was convicted of first-degree intentional homicide for shooting Dale Meister, the father of his granddaughter. He was sentenced to life in prison[2] without the possibility of release to extended supervision.[3]

---

[1] State v. Reinwand, No. 2017AP850-CR, unpublished certification (Wis. Ct. App. July 26, 2018).

[2] The Honorable Gregory J. Potter of Wood County presided.

[3] The parties and the sentencing court stated that Reinwand

(continued)

¶2 The court of appeals certified the appeal to this court to answer two questions:

> [W]hether the 'forfeiture by wrongdoing' doctrine applies at a homicide trial where the declarant is the homicide victim, but where the defendant killed the declarant to prevent him or her from testifying <u>at a separate proceeding</u>.
>
> . . . .
>
> [W]hether preventing the declarant from testifying must be the defendant's <u>primary</u> purpose for the wrongful act that prevented the declarant from testifying in that separate proceeding.

<u>State v. Reinwand</u>, No. 2017AP850-CR, unpublished certification (Wis. Ct. App. July 26, 2018).

¶3 We conclude the following: first, Meister's statements to family and friends about Reinwand were not testimonial; therefore, they do not implicate the Sixth Amendment's Confrontation Clause. Accordingly, we do not reach the certified questions regarding the forfeiture by wrongdoing exception to the right of confrontation.

---

could potentially have been eligible for "parole" after 20 years. Under Wisconsin's truth-in-sentencing laws, parole eligibility is not an option for any person who has committed a felony in Wisconsin on or after December 31, 1999. Wis. Stat. §§ 973.01(1) & (6), 973.014. However, a person sentenced to life in prison after December 31, 1999 may, in the discretion of the sentencing court, become eligible for release to extended supervision after serving a minimum of 20 years. § 973.014(1g). We assume all involved were aware of this distinction, and were simply using the word "parole" as colloquial shorthand to refer to this sentencing scheme.

All subsequent references to the Wisconsin Statutes are to the 2017-18 version unless otherwise indicated.

¶4 Second, the "other acts" evidence of Reinwand's prior burglary was properly admitted for the purpose of challenging his asserted memory problems. Third, Reinwand's counsel was not ineffective either at trial or at sentencing. For these reasons, we affirm the decision of the circuit court.

## I. BACKGROUND

¶5 Reinwand's daughter Jolynn and the victim, Dale Meister, were the parents of Reinwand's granddaughter, E.M. The couple ended their relationship in December 2007. Meister requested mediation in Wood County Family Court in January 2008 in an effort to seek periods of placement with E.M. The mediation occurred on February 25, 2008, and Meister was awarded placement every other weekend and on two partial days per week. Jolynn was unhappy with this placement decision and indicated that she wanted to go back to court to challenge it.

¶6 In the days leading up to the mediation, Reinwand had told Meister multiple times that he would harm or kill him if he continued to seek placement time. In discussions of these threats with friends and family members, Meister said he feared for his life. He repeatedly told friends and family that if anything happened to him, people should look to Reinwand.

¶7 Meister was found dead in his trailer home on March 4, 2008. He was shot three times at close range, twice in the face and once in the chest. He had been dead for several days by the time his body was discovered. The State interviewed Reinwand soon afterward but did not file its criminal complaint in this case until May 2013.

3

¶8 The case proceeded to jury trial in October 2013. The evidence presented to the jury included, but was not limited to, the following: (1) bullets used to kill Meister fired from a .22 pistol, "most likely" a Bryco-Jennings pistol; (2) Reinwand owned a pistol matching this description; (3) law enforcement found a .22-caliber bullet in Reinwand's garage with characteristics matching those of the bullets used to kill Reinwand; (4) law enforcement found a grip from a .22 Bryco-Jennings pistol under the front seat of Reinwand's truck that appeared to be cut with a "band saw," and there was a band saw in Jolynn's basement where Reinwand had been staying; (5) Jolynn said the saw belonged to her father; (6) another inmate testified that Reinwand confessed to committing the homicide; (7) Reinwand told police he was not "really arguing about" whether he killed Meister, but said that he could not remember it because he had memory problems; (8) Reinwand had choked Meister and threatened to kill him before; (9) witnesses saw a silver pickup truck matching the description of Reinwand's truck at Meister's trailer around the time Meister is thought to have been killed; and (10) the trailer showed no signs of forced entry, and the only other key was located at Jolynn's house where Reinwand had been staying.

¶9 In addition to all this evidence, the State introduced the testimony of Meister's family members and friends regarding the statements Meister made to them about Reinwand. A friend of Meister testified that Meister had come over to her house for coffee, and had told her that Reinwand said he "had guns" and

4

"could kill him if he wanted to." Another close friend testified about a conversation with Meister during one of Meister's frequent visits to his home. He stated that according to Meister, Reinwand had told Meister "he was going to shoot him in the temple and he could get away with it." Meister also told him that if anything happened to Meister, he should tell Meister's brother Ray that Reinwand did it. After this conversation, he allowed Meister to stay at his home, because Meister was "fearful of being at [his] trailer" due to Reinwand's threats.

¶10 Meister's pastor testified that Meister was "concerned for his life" and had told him that "if he came up dead, that the police should dig deeper" because "[Reinwand] would be behind it." Reinwand's son stated that Meister met with him at Arby's to ask his opinion on whether Reinwand would kill him, and added that "I don't think [Meister] was at ease at all." Meister's sister-in-law testified that Meister had discussed Reinwand's threats with her during two separate phone calls, and that he sounded frightened on both occasions. A total of 15 witnesses offered similar statements regarding Meister's fear that Reinwand would hurt or kill him. These hearsay statements were admitted over Reinwand's hearsay objection based on the forfeiture by wrongdoing doctrine.

¶11 The circuit court also admitted "other-acts" evidence of a prior burglary Reinwand committed. When law enforcement interviewed Reinwand after the homicide, he told them he was not "really arguing" that he had killed Meister, but could not

5

remember the homicide or a prior burglary he had committed. To challenge this asserted lack of memory, the State introduced a letter Reinwand had written to his granddaughter in 2012, in which he admitted to the burglary and described his motive. The letter also was admitted over Reinwand's objection.

¶12 Additionally, the circuit court had ruled before trial that the State's DNA expert could not provide expert testimony based on 2008 testing standards, but must instead rely on the updated standards that had been in effect since 2014. Under the 2014 standards, the expert could not conclusively state whether the DNA on the gun grip found under the seat of Reinwand's truck belonged to Reinwand. On cross-examination, Reinwand's attorney asked the DNA expert for her opinion as to whether Reinwand's DNA was present on seven other items found in Meister's trailer after the homicide. It was not. However, the expert's opinion on these items was based on the 2008 testing standards. The circuit court held that by asking questions about items tested under the 2008 standards, Reinwand's attorney had opened the door to the results of the 2008 DNA test on the gun grip. The jury was therefore allowed to hear that under the outdated 2008 testing standards, Reinwand was included as a possible contributor to the DNA found on the gun grip, and that the probability of randomly selecting an individual who may be included as a possible contributor was 1 in 61,000.

¶13 Reinwand was convicted of first-degree intentional homicide, and filed postconviction motions. He alleges that the evidence of his prior burglary was improperly admitted and that

his counsel was ineffective at trial for opening the door to the DNA evidence. He has requested a new trial. Alternatively, he argues that his counsel was ineffective at sentencing for failing to request a presentence investigation (PSI) or introduce more mitigating evidence, and he requests a new sentencing hearing.

¶14 The circuit court denied Reinwand's motions. The circuit court first concluded that Meister's statements about Reinwand were testimonial, but that they were admissible under the forfeiture by wrongdoing exception to the Confrontation Clause. Under the forfeiture by wrongdoing doctrine, a defendant forfeits his Sixth Amendment right to confront a witness when the defendant wrongly procures that witness's unavailability by conduct designed to prevent the witness from testifying. See Giles v. California, 554 U.S. 353 (2008). The circuit court found that Reinwand had killed Meister to prevent him from testifying in his possible future custody proceeding with Jolynn, and that he had therefore forfeited his right to confront Meister at his own trial. The circuit court also held that the other-acts evidence was properly admitted, and that counsel's performance was not deficient either at trial or at sentencing.

¶15 The court of appeals grouped Meister's statements about Reinwand into two categories: "(1) statements indicating that if Meister was found dead, Reinwand should be 'looked into'; and (2) statements telling the listener that Reinwand had threatened to harm or kill Meister and that Meister was afraid

7

that Reinwand was going to harm him." Reinwand, No. 2017AP850-CR at *1. The court of appeals explained that the circuit court had explicitly determined that the statements in the first category were testimonial, implicitly determined that the statements in the second category were testimonial, and admitted both categories of statements under the forfeiture by wrongdoing doctrine. The court of appeals then certified the appeal to this court to address the forfeiture by wrongdoing issue.

¶16 We accepted the certification, and without reaching the forfeiture by wrongdoing issue, we affirm the decision of the circuit court denying Reinwand's postconviction motions.

## II. DISCUSSION

### A. Standard of Review

¶17 This case requires us to determine whether Reinwand's Confrontation Clause right was violated by the admission of Meister's statements, determine whether other-acts evidence was properly admitted, and analyze an ineffective assistance of counsel claim. Whether the admission of a statement violates the defendant's Confrontation Clause right is "a question of constitutional law subject to independent review." State v. Nieves, 2017 WI 69, ¶15, 376 Wis. 2d 300, 897 N.W.2d 363 (citations omitted). "'We generally apply United States Supreme Court precedents when interpreting' the Sixth Amendment and the analogous Article 1, Section 7 of the Wisconsin Constitution." Id. (citations omitted). Other decisions about the admissibility of evidence are discretionary decisions of the circuit court, and are reviewed under the erroneous exercise of

discretion standard. State v. Franklin, 2004 WI 38, ¶6, 270 Wis. 2d 271, 677 N.W.2d 276.

¶18 Ineffective assistance of counsel claims "present mixed questions of fact and law." State v. Alexander, 2015 WI 6, ¶15, 360 Wis. 2d 292, 858 N.W.2d 662. "We uphold a circuit court's factual findings unless they are clearly erroneous." Id. (citation omitted). "However, whether counsel's performance was deficient and whether a defendant was prejudiced thereby, present questions of law that we review independently." Id. (citation omitted).

B. Testimonial and Nontestimonial Statements

¶19 The Confrontation Clause of the Sixth Amendment to the United States Constitution states that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."[4] As the United States Supreme Court has explained, understanding how this clause operates requires an understanding of the context surrounding its creation. See Crawford v. Washington, 541 U.S. 36, 38 (2004).

¶20 Under English common law, "[j]ustices of the peace or other officials examined suspects and witnesses before trial. These examinations were sometimes read in court in lieu of live testimony." Id. at 43. When defendants demanded to confront

---

[4] Article I, Section 7 of the Wisconsin Constitution makes substantially the same guarantee. As mentioned earlier, we generally apply United States Supreme Court precedent when interpreting these clauses.

9

these witnesses in court, they often were refused. Id. The inability to challenge a witness's incriminating statements raised serious concerns about their reliability, which called into question the legitimacy of some trials. See, e.g., id. at 44 (discussing the notorious treason conviction and execution of Sir Walter Raleigh based on unconfronted hearsay testimony).

¶21 The Confrontation Clause was designed to prevent this type of abuse, prohibiting "the use of ex parte examinations as evidence against the accused." Id. at 36. The clause's purpose is to ensure the reliability of testimony by allowing the accused to challenge a witness's statements "in the crucible of cross-examination." Id. at 61; State v. Zamzow, 2017 WI 29, ¶42, 374 Wis. 2d 220, 892 N.W.2d 637.

¶22 On the basis of this history and purpose, the Supreme Court has clarified that the Confrontation Clause applies only to statements that are testimonial in nature. See, e.g., Michigan v. Bryant, 562 U.S. 344, 354 (2011). Testimonial hearsay statements are admissible against a criminal defendant only if the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness. Crawford, 541 U.S. at 59.

¶23 Statements that are not made as substitutes for trial testimony, such as "casual remark[s] to an acquaintance," do not raise similar concerns about reliability and legitimacy. Bryant, 562 U.S. at 354. Such statements therefore do not implicate the Confrontation Clause, id., and are admissible so long as the rules of evidence permit their admission. See,

10

e.g., Nieves, 376 Wis. 2d 300, ¶29 ("'the admissibility of a [non-testimonial] statement is the concern of state and federal rules of evidence, not the Confrontation Clause'") (quoting Bryant, 562 U.S. at 359).[5]

¶24 A statement is testimonial only if "in light of all the circumstances, viewed objectively, the 'primary purpose' of the conversation was to 'create an out-of-court substitute for trial testimony.'" Ohio v. Clark, 135 S. Ct. 2173, 2180 (2015) (citations omitted).  This "primary purpose" test is an objective test.  "[T]he relevant inquiry is not the subjective or actual purpose of the individuals involved in a particular encounter, but rather the purpose that reasonable participants would have had, as ascertained from the individuals' statements and actions and the circumstances in which the encounter occurred."  Bryant, 562 U.S. at 360.

¶25 The Supreme Court has set forth four relevant factors used to determine whether a statement is testimonial:  "(1) the formality/informality of the situation producing the out-of-court statement; (2) whether the statement is given to law enforcement or a non-law enforcement individual; (3) the age of

---

[5] Reinwand does not suggest any grounds other than the Confrontation Clause for excluding Meister's statements.  For this reason, our review regarding Meister's statements is limited to whether their admission violated the Confrontation Clause.  See State v. Mattox, 2017 WI 9, ¶4 n.3, 373 Wis. 2d 122, 890 N.W.2d 256 (limiting review to whether admission of evidence violated the Confrontation Clause when defendant raised no other grounds for exclusion).

the declarant, and (4) the context in which the statement was given."  State v. Mattox, 2017 WI 9, ¶32, 373 Wis. 2d 122, 890 N.W.2d 256 (interpreting Clark, 135 S. Ct. at 2180-82).  In this case, an analysis of these four factors demonstrates that Meister's statements to his friends and family regarding Reinwand were nontestimonial.

¶26 The first factor to consider is the formality or informality of the situation in which the out-of-court statement was made.  The more formal the situation, the more likely it is to be testimonial.  "'A formal station-house interrogation' . . . is more likely to provoke testimonial statements, while less formal questioning is less likely to reflect a primary purpose aimed at obtaining testimonial evidence against the accused."  Id. at 2180 (citations omitted).

¶27 In this case, Meister's statements all were given in informal situations.  He expressed his fears to his friends and family in living rooms, kitchens, dining rooms, and even at an Arby's.  In stark contrast to the "formal station-house interrogation" contemplated in Clark, Meister's conversations with family and friends were not interrogations at all.  Even his conversation with his pastor occurred in the pastor's office at his church, where Meister regularly visited after attending services to discuss what was going on in his life.  The informality of the situations that gave rise to Meister's statements about Reinwand suggest that they were not made for the primary purpose of creating a substitute for trial testimony.

12

¶28 The second factor is whether the statement is given to law enforcement or a non-law enforcement individual. While the United States Supreme Court has "stopped short of adopting a 'categorical rule'" that only statements made to law enforcement officers can be testimonial, the Court has held that "statements to persons other than law enforcement officers were 'much less likely to be testimonial than statements to law enforcement officers.'" Mattox, 373 Wis. 2d 122, ¶34 (citing Clark, 135 S. Ct. at 2181). In this case, none of Meister's statements about Reinwand were made to law enforcement officers, nor did he seek to contact law enforcement about his concerns. This factor suggests that his statements were not made for the primary purpose of creating a substitute for trial testimony.

¶29 The third factor is the declarant's age. This factor was relevant in Clark because the declarant was three years old. Clark, 135 S. Ct. at 2177. "Statements by very young children will rarely, if ever, implicate the Confrontation Clause," because very young children "'have little understanding of prosecution'" and would not likely "intend [their] statements to be a substitute for trial testimony." Id. at 2182. While a statement is unlikely to be testimonial if it is made by a young child, it does not follow that a statement is likely to be testimonial simply because it is made by an adult. Rather, that the declarant is an adult is a neutral factor, making the statement neither more nor less likely to be testimonial. Here, the declarant was an adult, so that factor does not help us determine the statement's primary purpose. See Mattox, 373

13

Wis. 2d 122, ¶32 n.7 (explaining that because the declarant in that case was an adult, the age of the declarant was not helpful in determining whether the declarant's statements were testimonial).

¶30 The fourth and final factor is the context in which the statement was given. "Courts must evaluate challenged statements in context," which includes evaluating the questioner's identity, the relationship between the parties to the conversation, and the circumstances surrounding the conversation. See Clark, 135 S. Ct. at 2182. In this case, Meister's statements all were made during conversations with his family and friends. The witnesses reported that Meister was concerned, stressed, and agitated during these conversations, and that he appeared to be genuinely frightened. This demeanor suggests that he was expressing genuine concern and seeking advice, rather than attempting to create a substitute for trial testimony.

¶31 Additionally, Meister spoke to at least 15 friends and family members about Reinwand's threats, but chose not to speak with any law enforcement officers. Further, when one of his friends suggested that he go to the police, he explicitly refused and said "I'm a Meister . . . we can handle things." He told multiple witnesses that if anything happened to him, they should tell his brother, rather than the police, that it was Reinwand. The only statement in which he brought up law enforcement was during the conversation with his pastor, when he said that the police should "dig deeper" if he died, because it

14

would "look staged." The mere mention of law enforcement is not enough to make this statement testimonial given the informality and overall context of the conversation. The context in which Meister's statements were made suggests that their primary purpose was not to create a substitute for trial testimony.

¶32 For the foregoing reasons, an analysis of the <u>Clark</u> factors demonstrates that all of Meister's statements about Reinwand to his friends and family were nontestimonial. Because these statements do not implicate the Confrontation Clause, we do not address the certified questions regarding the forfeiture by wrongdoing exception to the right of confrontation.

### C. Other Acts Evidence

¶33 Reinwand next argues that the circuit court improperly admitted "other-acts" evidence when it permitted the State to introduce a letter he had written to his granddaughter, in which he admitted to committing a prior non-violent burglary. Evidence of other crimes, wrongs, or acts committed by the defendant is admissible at trial only if it satisfies three requirements: (1) "it is offered for a permissible purpose," (2) "it is relevant," and (3) "its probative value is not substantially outweighed by the risk or danger of unfair prejudice." <u>State v. Hurley</u>, 2015 WI 35, ¶57, 361 Wis. 2d 529, 861 N.W.2d 174 (citations omitted).

¶34 Regarding the permissible purpose requirement, Wis. Stat. § 904.04(2)(a) contains a non-exhaustive list of permissible purposes for introducing evidence of other crimes, wrongs, or acts committed by the defendant. We have recognized

15

that pursuant to this statute, "[t]he purposes for which other-acts evidence may be admitted are 'almost infinite.'" State v. Marinez, 2011 WI 12, ¶25, 331 Wis. 2d 568, 797 N.W.2d 399. There is a notable limitation, however: evidence "is not admissible to prove the character of a person in order to show that the person acted in conformity therewith." § 904.04(2)(a). In other words, the State may not seek to prove a defendant's propensity to commit crimes by showing that the defendant has committed crimes before.

¶35 In this case, the circuit court did not erroneously exercise its discretion by concluding that the evidence was offered for a permissible purpose. When he was interviewed by law enforcement officers after Meister's death, Reinwand was asked about his involvement in the killing and was made aware of Meister's statements to his friends and family members. He admitted that he was not "really arguing about" whether he had killed Meister, but claimed that he could not remember the homicide, nor a prior burglary he had committed, due to his memory problems.

¶36 In order to rebut his claim of lack of memory, the State introduced a letter he had written to his granddaughter in 2012. In the letter, he explains that the victim "owed him money and did not pay it back," so he "got pissed off and broke into his house and stoled (sic) some stuff." The letter was introduced to challenge his asserted lack of memory. An attack on credibility is a permissible purpose. The letter was not introduced as character or propensity evidence in violation of

16

Wis. Stat. § 904.04(2)(a); the State did not introduce it for the purpose of showing that because he previously burglarized his neighbor's house, he is more likely to have killed Meister.

¶37 The second requirement, relevance, is satisfied if the proffered evidence has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Wis. Stat. § 904.01. In this case, the circuit court did not erroneously exercise its discretion by concluding that the evidence was relevant to Reinwand's credibility. Stated otherwise, it tends to cast doubt on Reinwand's claimed lack of memory by suggesting that he did remember his prior burglary.

¶38 The third and final requirement is that the evidence's "probative value of the evidence is substantially outweighed by the risk or danger of unfair prejudice." Hurley, 361 Wis. 2d, ¶58; Wis. Stat. § 904.03.

> Offered evidence runs the risk of unfair prejudice when it has a tendency to influence the outcome by improper means or if it appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish, or otherwise causes a jury to base its decision on something other than the established propositions in the case.

State v. Muckerheide, 2007 WI 5, ¶33, 298 Wis. 2d 553, 725 N.W.2d 930. In this case, the circuit court did not erroneously exercise its discretion by concluding that the probative value of the evidence was not substantially outweighed by the risk or danger of unfair prejudice. The crime he admitted in his letter

17

was a non-violent burglary of an unoccupied home. The circuit court reasonably concluded that the letter would not unfairly arouse a jury's sense of horror or provoke its instinct to punish Reinwand. For the foregoing reasons, the circuit court did not erroneously exercise its discretion by admitting evidence of Reinwand's prior burglary.

### D. Ineffective Assistance at Trial

¶39 Next, Reinwand claims his counsel was ineffective at trial for opening the door to the results of a DNA test conducted under the now-outdated 2008 testing standards, which identified him as a possible contributor to a DNA mixture on the gun grip found under the front seat of his truck. The right to effective assistance of counsel is implicit in the Sixth Amendment's guarantee of the right to counsel. See, e.g., Strickland v. Washington, 466 U.S. 668, 686 (1984) ("'[T]he right to counsel is the right to the effective assistance of counsel.'" (citation omitted)).

¶40 We use the two-prong "Strickland test" to determine whether counsel was ineffective. State v. Maday, 2017 WI 28, ¶54, 374 Wis. 2d 164, 892 N.W.2d 611. "Under the first prong, the defendant must show that counsel's performance was deficient." Id. This requires the defendant to prove that his counsel "'made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'" State v. Starks, 2013 WI 69, ¶54, 349 Wis. 2d 274, 833 N.W.2d 146 (quoting Strickland, 466 U.S. at 687).

18

¶41 In determining whether counsel's performance was deficient, we must make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689. For this reason, we are "'highly deferential' to counsel's strategic decisions" such that "where a lower court determines that counsel had a reasonable trial strategy, the strategy 'is virtually unassailable in an ineffective assistance of counsel analysis.'" State v. Breitzman, 2017 WI 100, ¶65, 378 Wis. 2d 431, 904 N.W.2d 93 (citations omitted).

¶42 To satisfy the second prong of the Strickland test, "the defendant must show that he was prejudiced by counsel's deficient performance." Maday, 374 Wis. 2d 164, ¶54; Strickland, 466 U.S. at 687. Prejudice requires the defendant to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

¶43 A defendant must prove both elements to succeed in an ineffective assistance claim. Id. at 687. Therefore, "[i]f the defendant fails to prove one element, it is unnecessary to address the other." State v. Floyd, 2017 WI 78, ¶37, 377 Wis. 2d 394, 898 N.W.2d 560.

19

¶44 Assuming without deciding or implying that counsel's performance was deficient with regard to the DNA testimony, we conclude that Reinwand was not prejudiced by counsel's alleged error. First, regardless of whether the expert could conclusively state that Reinwand's DNA was found on the gun grip, the grip was found under the front seat of Reinwand's truck. Further, the grip came from a pistol identified by at least one witness as belonging to Reinwand. A jury reasonably could have concluded that the grip belonged to Reinwand without the DNA evidence.

¶45 Second, the jury heard that the 2008 methods used to test the DNA on the gun grip were outdated. Reinwand's counsel elicited an admission from the State's DNA expert that the 2014 methods, which produced an inconclusive result as to the presence of Reinwand's DNA on the gun grip, were better methods to use in this situation.

¶46 Third, as previously discussed, the evidence of Reinwand's guilt was overwhelming even in the absence of the DNA testimony. The strength of the State's case led Reinwand to make the following admission regarding his counsel's alleged trial error:

> Defendant Reinwand does not contend this error in itself is sufficient to warrant a new trial. However, this error, coupled with the errors outlined above, provides further support for Reinwand's motion for a new trial.

We have already concluded, however, that all of the other evidence challenged by Reinwand was properly admitted. There is

20

therefore no reasonable probability that, but for counsel's alleged error regarding the DNA testimony, the result of the trial would have been different. For this reason, Reinwand's claim of ineffective assistance of counsel at trial fails. See Floyd, 377 Wis. 2d 394, ¶37 ("If the defendant fails to prove one element, it is unnecessary to address the other.").

E. Ineffective Assistance at Sentencing

¶47 Reinwand alternatively argues that he is entitled to a new sentencing hearing because his attorney was ineffective at sentencing. Reinwand's conviction for first-degree intentional homicide required a mandatory life sentence; the only potential issue involves extended supervision, for which he could have become eligible within 20 years. He argues that counsel performed deficiently by providing only a cursory argument for extended supervision eligibility, by failing to include evidence of mitigating circumstances[6] such as his post-traumatic stress disorder or his love of his grandchildren, and by failing to request a PSI. Assuming without deciding or implying that counsel's performance at sentencing was deficient, we conclude that Reinwand was not prejudiced by counsel's alleged errors.

---

[6] A mitigating circumstance is "[a] fact or situation that does not bear on the question of a defendant's guilt but that may bear on a court's possibly lessening the severity of its judgment." Circumstance, Black's Law Dictionary (10th ed. 2014). An example of a mitigating circumstance is a defendant's lack of a prior criminal record. See State v. Lewandowski, 122 Wis. 2d 759, 764, 364 N.W.2d 550 (Ct. App. 1985).

21

¶48 Regarding the PSI, there is no reasonable probability that requesting a PSI would have resulted in a different sentence. The sentencing court had already reviewed a 2011 PSI from Reinwand's prior burglary conviction. Additionally, counsel pointed out that a new PSI in this case would elicit unfavorable testimony and would not help Reinwand's cause.

¶49 Likewise, there is no reasonable probability that the recitation of Reinwand's suggested mitigating evidence would have resulted in a different sentence. The sentencing court was aware of much of this allegedly mitigating evidence. The same sentencing court previously had presided over two "John Doe" investigations involving Reinwand, had reviewed the aforementioned 2011 PSI, and had presided over the trial that gave rise to this conviction. Reinwand's counsel stated that "the court knew more about my client in that case than any other case I've handled because of the length and breadth of the John Doe investigation, the pretrial litigation, the trial." The sentencing court already knew, for example, the full extent of Reinwand's criminal history, his claimed memory issues, and his love for his family. Repeating this information at sentencing would not have affected the outcome.

¶50 Additionally, some of Reinwand's proffered mitigating factors were not considered by the sentencing court to be mitigating factors at all. Regarding his memory issues, the sentencing court stated that he "appeared to use the memory issue as an excuse" and that it was "not a mitigating factor." The alleged post-traumatic stress disorder was not a mitigating

22

factor. While Reinwand claimed it was caused by his wife's suicide, the sentencing court knew from a John Doe investigation that Reinwand was going to be charged with first-degree intentional homicide for killing his wife. The sentencing court explained that "[t]o argue that you have a mental disorder from the death of your wife, the death that you caused is not a mitigating factor but rather an aggravating one." The sentencing court also considered Reinwand's love for his family, but concluded that it was outweighed by the fact that he had killed Meister. That is, he had intentionally deprived his grandchild of her father.

¶51 Finally, the facts of the case were horrific——the sentencing court described it as "a premeditated, thought out . . . [a]lmost an execution-type" killing. The sentencing court made clear that due to the nature of the crime, Reinwand would have been sentenced to life without the possibility of release to extended supervision regardless of counsel's performance at sentencing:

> When a person shoots another human being three times, two at point-black range, it's obvious that they are doing so with a cold and depraved heart and that type of person cannot be put back out into the community at any time.
>
> . . . .
>
> I would like to conclude by stating based upon the facts of this case, more specifically how the victim was killed, there was nothing the defendant's trial attorney could have argued that would have swayed me into not ordering life without parole.

23

For all these reasons, Reinwand was not prejudiced by counsel's alleged errors at sentencing. His claim of ineffective assistance of counsel at sentencing therefore fails. See Floyd, 377 Wis. 2d 394, ¶37 ("If the defendant fails to prove one element, it is unnecessary to address the other.").

### III. CONCLUSION

¶52 We conclude the following. First, Meister's statements to family and friends about Reinwand were not testimonial; therefore, they do not implicate the Sixth Amendment's Confrontation Clause. Accordingly, we do not reach the certified questions regarding the forfeiture by wrongdoing exception to the right of confrontation.

¶53 Second, the "other acts" evidence of Reinwand's prior burglary was properly admitted for the purpose of challenging his asserted memory problems. Third, Reinwand's counsel was not ineffective either at trial or at sentencing. For these reasons, we affirm the decision of the circuit court.

*By the Court.*—The decision of the circuit court is affirmed.

¶54 REBECCA FRANK DALLET, J.   *(concurring).*  I agree with the majority that the "other acts" evidence of Joseph Reinwand's prior burglary was properly admitted and that Reinwand's counsel was not ineffective at trial or at sentencing.  However, I write separately on the issues surrounding Reinwand's Sixth Amendment right to confrontation.

¶55 The majority concludes that all of the statements made by Dale Meister were not testimonial and therefore does not reach the certified questions.  I agree with the majority that almost all of the statements are nontestimonial.  However, the statement Meister made to Pastor Martin Baur is testimonial and therefore implicates Reinwand's Sixth Amendment right to confront the declarant.  I therefore reach the issues certified by the court of appeals:  (1) "whether the 'forfeiture by wrongdoing' doctrine applies at a homicide trial where the declarant is the homicide victim, but where the defendant killed the declarant to prevent him or her from testifying at a separate proceeding"; and (2) "whether preventing the declarant from testifying must be the defendant's primary purpose for the wrongful act that prevented the declarant from testifying in that separate proceeding."  State v. Reinwand, No. 2017AP850-CR, unpublished certification (Wis. Ct. App. July 26, 2018) (emphasis in original).

¶56 I conclude that for the forfeiture by wrongdoing doctrine to apply, the defendant must intend to prevent the declarant from testifying at a proceeding against the defendant, whether that proceeding is separate or otherwise.  Because

1

Meister, the declarant in this case, would not have testified in a proceeding against Reinwand, the defendant, the forfeiture by wrongdoing doctrine does not apply. I further conclude that in light of the overwhelming evidence against Reinwand, including 14 other witnesses who testified regarding Meister's fear that Reinwand would harm or kill him, the circuit court's error in admitting Meister's statement to Pastor Baur was harmless.

## A. Testimonial Statements

¶57 I begin with the question of whether the statements made by Meister were testimonial. The Sixth Amendment to the United States Constitution provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." The United States Supreme Court has clarified that the Confrontation Clause applies to statements that are testimonial in nature. See, e.g., Michigan v. Bryant, 562 U.S. 344, 354 (2011). Statements are considered testimonial when the "primary purpose" of the conversation was to "creat[e] an out-of-court substitute for trial testimony." Ohio v. Clark, 135 S. Ct. 2173, 2180 (2015) (quoted source omitted). The Confrontation Clause generally bars the use of testimonial statements unless the witness is unavailable and the defendant had a prior opportunity for cross-examination. Crawford v. Washington, 541 U.S. 36, 54 (2004). The Crawford court articulated three classes of "testimonial statements," only one of which is applicable to the statements at issue here: "'statements that were made under circumstances which would lead an objective witness reasonably to believe that

2

the statement would be available for use at a later trial.'" Id. at 52 (quoted source omitted).[1]

¶58 In Clark, the United States Supreme Court recently affirmed that statements to persons other than law enforcement officers are subject to the Confrontation Clause. Clark, 135 S. Ct. at 2180. The United States Supreme Court held that for a statement to fall within the Confrontation Clause, the "primary purpose" of the statement must be testimonial. Id. The Court emphasized that in determining the "primary purpose" of a statement, a court must consider all of the relevant circumstances. Id. (quoting Bryant, 562 U.S. at 369). Factors the circuit court must consider include the formality or informality of the situation and the context in which the statement is made, including whether the statement is made to someone who is "principally charged with uncovering and prosecuting criminal behavior." Clark, 135 S. Ct. at 2182. The question at the heart of the inquiry is whether an ordinary person in the position of the declarant would have anticipated that the statement would be used to establish evidence to prosecute the defendant. See Bryant, 562 U.S. at 357, n.3.

¶59 Almost all of the statements Meister made were nontestimonial: they were made to family and friends, in informal settings, and related generally to Meister's fears that

---

[1] The two other classes of statements are "ex parte in-court testimony or its functional equivalent" and "extrajudicial statements . . . contained in formalized testimonial materials." Crawford v. Washington, 541 U.S. 36, 51-52 (2004).

3

Reinwand would harm or kill him. However, one statement stands apart from the rest. At trial, Pastor Baur testified about a statement Meister made in the time leading up to the mediation between Meister and Reinwand's daughter over visitation with their daughter, Reinwand's granddaughter. Pastor Baur testified that during a visit at the church, Meister told him "that if he [Meister] came up dead, that the police should dig deeper because it would look staged." Pastor Baur said Meister provided the name "Joe Reinwand" and said that "Joe would be behind it."

¶60 In determining the primary purpose of the conversation at issue in Clark, the United States Supreme Court focused on whether the declarant knew that the statement would be used to arrest or punish the defendant and whether the declarant intended his statement to be used by the police or prosecutors. Clark, 135 S. Ct. at 2181. Unlike the other statements Meister made that expressed fear of death or bodily injury at the hands of Reinwand, Meister told Pastor Baur to go to the police so that they could investigate and subsequently prosecute Reinwand for Meister's murder. Meister also instructed Pastor Baur to tell the police it would look staged so that they would investigate fully and "dig deeper." Although it was not a formal complaint to the police, Meister sought out his pastor, someone who could be trusted to deliver a message to law enforcement. The statement had a primary purpose——to be used as evidence to prosecute Reinwand for Meister's death. The fact that Meister himself did not go to police is inapposite. It is

4

clear from the numerous statements made to family and friends that Meister genuinely feared that Reinwand would harm or kill him. As in Jensen, where this court determined that a letter and voicemail messages intended for the police were testimonial, the statement made to Pastor Baur was a statement intended to be repeated to the police for future prosecution. State v. Jensen, 2007 WI 26, ¶¶30-31, 299 Wis. 2d 267, 727 N.W.2d 518. Meister instructed Pastor Baur to go to the police and tell them that Reinwand had committed homicide.

## B. Forfeiture by Wrongdoing

¶61 Having determined that the statement to Pastor Baur is testimonial, I next turn to whether Reinwand's Sixth Amendment rights were violated by the admission of Meister's statement to Pastor Baur. In Giles v. California, 554 U.S. 353, 361 (2008), the United States Supreme Court held that a defendant forfeits his Sixth Amendment right to confrontation when he not only prevents a witness from testifying but also intended to prevent that witness from testifying. See also State v. Baldwin, 2010 WI App 162, ¶¶37-39, 330 Wis. 2d 500, 794 N.W.2d 769.

¶62 The issue here involves the requirement that the defendant intended to prevent the witness from testifying. The State cites to United States v. Gray, 405 F.3d 227, 241 (4th Cir. 2005), for the general proposition that the forfeiture by wrongdoing exception applies "without regard to the nature of the charges at the trial in which the declarant's statements are offered." The State further asserts that several federal courts of appeals have applied the forfeiture by wrongdoing exception

5

in cases where the murder that made the witness unavailable occurs before the other proceedings have begun. See, e.g., United States v. Stewart, 485 F.3d 666, 672 (2d Cir. 2007); United States v. Houlihan, 92 F.3d 1271, 1279 (1st Cir. 1996).

¶63 Even if this court accepts the premise that the mediation between Meister and Reinwand's daughter would result in future court proceedings, those proceedings would be between Meister and Reinwand's daughter. Reinwand would not be a party in those proceedings. The State provides no support for the proposition that the forfeiture by wrongdoing doctrine applies where the proceeding in which the declarant is made unavailable is not one where the declarant would testify against the defendant. In Gray, the Fourth Circuit concluded that the forfeiture by wrongdoing doctrine applied when the defendant's wrongdoing "was intended to, and did, render the declarant unavailable as a witness against the defendant." Gray, 405 F.3d at 241 (emphasis added). "The common-law forfeiture rule was aimed at removing the otherwise powerful incentive for defendants to intimidate, bribe, and kill the witnesses against them——in other words, it is grounded in 'the ability of courts to protect the integrity of their proceedings.'" Giles, 554 U.S. at 372 (emphasis added) (quoting Davis v. Washington, 547 U.S. 813, 834 (2006)). Because Meister would not have testified in a proceeding against Reinwand, the forfeiture by wrongdoing doctrine does not apply. Therefore, the admission of Meister's statement to Pastor Baur violated Reinwand's Sixth Amendment right to confrontation.

6

¶64 Because I conclude that the forfeiture by wrongdoing doctrine does not apply, I decline to reach the second certified issue. However, I note that the United States Supreme Court has never required that preventing a declarant from testifying in a separate proceeding be the primary purpose for the wrongful act that prevented the declarant from testifying, and there is no support for that assertion in the case law.

C. Harmless Error

¶65 The determination that the admission of Meister's statement to Pastor Baur violated Reinwand's constitutional right to confrontation does not end the inquiry. State v. Williams, 2002 WI 118, ¶2, 256 Wis. 2d 56, 652 N.W.2d 391. Instead, I apply a harmless error analysis. Id. "[B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." Chapman v. California, 386 U.S. 18, 24 (1967). This court has articulated several factors to aid in the harmless error analysis, including: the frequency of the error; the importance of the erroneously admitted evidence; whether other evidence corroborates or contradicts the erroneously admitted evidence; whether other untainted evidence duplicates the erroneously admitted evidence; the nature of the defense; and the nature and overall strength of the State's case. See State v. Stuart, 2005 WI 47, ¶41, 279 Wis. 2d 659, 695 N.W.2d 259.

¶66 The evidence presented against Reinwand at trial included nontestimonial statements that Meister made to 14 other

7

individuals regarding threats that Reinwand had made and Meister's fear that Reinwand was going to harm or kill him. These statements duplicated the inadmissible statement that Meister made to Pastor Baur. Moreover, there was overwhelming evidence to convict Reinwand, including physical evidence linking him to the murder weapon and a similar bullet, as well as Reinwand's confession to the police. In light of all of the evidence admitted at trial, I conclude that the erroneous admission of Meister's statement to Pastor Baur was harmless beyond a reasonable doubt.

¶67 For the foregoing reasons, I concur.

¶68 I am authorized to state that Justices SHIRLEY S. ABRAHAMSON and ANN WALSH BRADLEY join this concurrence.