COURT OF APPEALS
DECISION
DATED AND FILED

July 27, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If
published, the official version will appear in
the bound volume of the Official Reports.

A party may file with the Supreme Court a
petition to review an adverse decision by the
Court of Appeals. *See* WIS. STAT. § 808.10
and RULE 809.62.

Appeal No. **2020AP1589-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2014CF557

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

 V.

BRYAN L. URQUHART,

   DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Sheboygan County: ANGELA W. SUTKIEWICZ, Judge. *Affirmed*.

Before Gundrum, P.J., Neubauer and Grogan, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Bryan L. Urquhart appeals a judgment of conviction, entered upon a jury verdict, for first-degree sexual assault of a child as well as an order denying his postconviction motion. He argues on appeal that he was denied his constitutional right of confrontation by the admission of his late daughter's suicide note at trial. He also argues he received constitutionally ineffective assistance of counsel as a result of his trial counsel's handling of a portion of the victim's testimony the jury had a hard time hearing as well as testimony that Urquhart had not been prosecuted for the sexual abuse of his late daughter that she alleged in her suicide note. We reject his arguments and affirm.

## BACKGROUND

¶2 Urquhart was charged in September 2014 with a single count of first-degree sexual assault of a child. The criminal referral was based on disclosures made by Urquhart's youngest daughter, Donna,[1] to a social services worker, in which she alleged that Urquhart had raped her when she was younger. At trial, Donna described two events of unwanted touching to her vaginal area over clothing when she was seven or eight years old, then a few weeks after the second incident, an act of intercourse that occurred on the living room couch. The act of intercourse was the basis for the charge.

¶3 Prior to Donna's allegations, her older sister Amanda had intentionally overdosed on prescription medication while away at college in

---

[1] Pursuant to the policy underlying WIS. STAT. RULE 809.86 (2019-20), we refer to the victim and her family members using pseudonyms.

All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

Indiana. Amanda was found by her roommate while still alive, and she handed her roommate a suicide note that she had prepared shortly before ingesting the medication.[2] Amanda's note was a sorrowful goodbye to her friends and family, and in the course of describing her angst and the reasons for her suicide, Amanda revealed that Urquhart had repeatedly raped her starting when she was nine or ten years old and continuing until she was fifteen. When Donna later disclosed her own sexual abuse to a treatment provider, she mentioned Amanda's suicide note and her sister's claims of having been raped by their father.

¶4 The State filed a pretrial motion seeking to admit the suicide note at Urquhart's trial. The circuit court determined the suicide note was admissible as other acts evidence, but it deferred ruling on hearsay and other issues raised by the defense. At a subsequent hearing, the court concluded Amanda clearly desired to write to her loved ones "a goodbye note with a directive for dividing her property and … an explanation for her suicide." The court determined the note had comparable guarantees of trustworthiness that warranted admissibility under the residual hearsay exception. *See* WIS. STAT. § 908.045(6). Amanda's suicide note was received into evidence at trial. The jury received a limiting instruction that Amanda's note was not to be used to assess Urquhart's character and should be considered only on the issues of opportunity, motive, intent, and context for Donna's allegation of intercourse.

¶5 During the State's case-in-chief, Donna's mother described her efforts to question her other children about Amanda's sexual assault allegations in the wake of Amanda's suicide. When asked if the Sheboygan Police Department

---

[2] Amanda was taken to the hospital and died shortly thereafter.

3

had reached out after Amanda's passing, Donna's mother responded that she had "provided them a copy of the note to see if there was anything that could be done and they told [her that] because he has the right to face his accuser and she is no longer here, nothing could be done."

¶6     Later that day, James Veeser, a Captain with the Sheboygan Police Department, testified that Donna's mother had discussed with him whether any charges could potentially be brought against Urquhart in light of the allegations in Amanda's suicide note.  Veeser testified that he had talked with the district attorney, who concurred with Veeser's assessment that charges could not be pursued because Amanda was deceased.  Veeser also discussed with Donna's mother whether she believed anything may have happened to her other daughters, to which she responded that she was not sure but did not think so.  With no evidence at the time of any abuse involving Donna or her other living sister, Veeser advised Donna's mother to focus on grieving and counseled her to contact the police if she had new information.

¶7     During an emotional moment in Donna's testimony, just after she had described her reactions upon being asked to recount the alleged assaults, the circuit court paused for a ten-minute break.  When the proceedings resumed, the court placed on the record that the jury had informed the bailiff that it was unable to hear Donna.  The court requested that the prosecutor have the victim-witness coordinator discuss with Donna the need to speak more loudly and directly into the microphone.  After the recess, Donna provided specifics about the alleged acts of sexual abuse.

¶8     Urquhart testified and denied raping Donna or Amanda.  Urquhart presented testimony from social workers and therapists who had interviewed

Donna and Amanda over the years indicating that neither of the girls had accused him of sexual assault. He also presented testimony from social workers that several domestic-abuse investigations over the years were closed based in part upon the children's representations that things were okay at home and that they were not fearful of their father.

¶9    The jury returned a guilty verdict, and the circuit court sentenced Urquhart to forty years of initial confinement followed by twenty years of extended supervision. Urquhart filed a postconviction motion seeking a new trial based on ineffective assistance of trial counsel. Urquhart alleged that his trial attorney failed to ensure that the jury heard all material testimony from Donna. Urquhart also argued his trial attorney should have objected when the State introduced testimony regarding the State's inability to prosecute the sexual abuse alleged by Amanda.

¶10   The circuit court denied Urquhart's postconviction motion following a ***Machner*** hearing.[3] First addressing the jury's inability to hear a portion of Donna's testimony, the court determined that her testimony during that time period was on background matters and was not material to her allegations against Urquhart because it did not include any details of the assault. Moreover, the court noted that Donna was only "speaking very softly during the last few questions before the break," and none of the matters she was testifying about prejudiced Urquhart's defense theories. Finally, the court credited trial counsel's explanation that it did Urquhart no favors to have Donna repeat her testimony.

---

[3] *See **State v. Machner**, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).*

Trial counsel believed the issue "either made no difference or was slightly positive for the defense."[4]

¶11    The circuit court also rejected Urquhart's assertion that his attorney was constitutionally ineffective for failing to object to testimony that authorities were unable to prosecute Urquhart based on Amanda's assertions of abuse in her suicide note. The court accepted trial counsel's explanation that he did not feel an objection was warranted. Trial counsel testified he understood postconviction counsel's concern that a jury might be inclined to punish Urquhart for the unprosecuted assault of Amanda, but he also believed that the jury could more appropriately focus on the case at hand hearing that the earlier case was not pursued. The court noted that the evidence showed the police did not investigate the matter, the family had denied allegations of abuse, and Amanda's mother had no reason to suspect that sexual abuse had occurred. Urquhart now appeals.

## DISCUSSION

*I. Confrontation Right*

¶12    Urquhart first argues his Sixth Amendment right of confrontation was violated by admission of the suicide note at trial.[5] The Confrontation Clause

---

[4] This conclusion appears influenced in part by counsel's observation that Donna was taking a long time to answer questions at trial and was very soft spoken. Counsel believed that while the jury could conclude these matters were explained by the troublesome subject matter of the questioning, her difficulty answering and delayed responses could potentially be regarded as favorable to the defense "because it shouldn't take 30 or 45 seconds to answer a fairly straightforward question."

[5] As the State notes, Urquhart raises no challenge to the admissibility of the suicide note under the Rules of Evidence. Accordingly, we confine our analysis to the constitutional issue presented.

applies only to statements that are testimonial in nature. *State v. Reinwand*, 2019 WI 25, ¶22, 385 Wis. 2d 700, 924 N.W.2d 184 (citing *Michigan v. Bryant*, 562 U.S. 344 (2011)); *see also Ohio v. Clark*, 576 U.S. 237, 245 (2015). But statements that "are not made as substitutes for trial testimony, such as 'casual remark[s] to an acquaintance,' do not raise similar concerns about reliability and legitimacy" and therefore do not violate the Confrontation Clause by their admission. *Reinwand*, 385 Wis. 2d 700, ¶23 (alteration in original; *citing Bryant*, 562 U.S. at 354).

¶13    Four factors guide the analysis of whether the primary purpose of a statement is testimonial: (1) the formality of the situation in which the out-of-court statement was produced; (2) whether the statement was given to law enforcement; (3) the declarant's age; and (4) the context in which the statement was made. *Id.*, ¶25. Whether a defendant's Sixth Amendment Confrontation Clause rights were violated by the admission of evidence presents a question of constitutional law subject to de novo review. *State v. Nieves*, 2017 WI 69, ¶15, 376 Wis. 2d 300, 897 N.W.2d 363.

¶14    We thus examine the suicide note at issue to determine whether it was made for the primary purpose of creating prosecutorial evidence. *See State v. Jensen*, 2021 WI 27, ¶18, 396 Wis. 2d 196, 957 N.W.2d 244, *cert. denied*, 142 S. Ct. 1187 (2022). The suicide note was addressed "To all those who are dear." It began with Amanda stating:

> This has been a process in the making. I have been planning this for awhile. Dad, I wanted to prove you wrong. I wanted to live to 25. And prove I was better. But you caused it! You beat and raped me. That is something I couldn't handle[.] Why? WHY did you do that to your own child? Is that why I was your favorite?

Addressing her mother specifically, Amanda wrote, "Help [Donna]. She is [taking] my path. Save her." Amanda then addressed her younger sisters and friends by name, expressing love, consolation, regret, and advice. For many of these individuals, Amanda specified which items of her personal property they should receive. Later, Amanda added, "But Dad, what he did weighs me down[.]" Then she stated her desires for cremation and to have her organs donated. Toward the end of the note, Amanda wrote: "But it got to me. Here is why[.] From the time I was 9 or 10 till I was 15 my dad raped me. I couldn[']t forgive him[.]" Amanda then alleged that other individuals had also abused her, and she wrote that she "can't handle it. My future goes nowhere. I won't ever be anything." The note concluded with Amanda expressing her love for her family and friends and again apologizing to them.

¶15 Urquhart argues the suicide note was testimonial because it was planned,[6] accusatorial, and broadly addressed "[t]o all those who are dear." Urquhart rejects the notion that the suicide note was "written to one private party or close family member," asserting that the statements were "public or at least, semi-public." Urquhart additionally argues that the "statements were formalized into a written document that the trial court deemed akin to a [W]ill."

¶16 We reject these characterizations and conclude Amanda's suicide note was nontestimonial.[7] Contrary to Urquhart's assertion that the note

---

[6] Urquhart argues that the suicide note's reference to planning applied to the writing of the note itself. To the contrary, in our view, it is apparent from the context and circumstances that Amanda was referring to the act of ending her life as being planned.

[7] It appears to be undisputed that Amanda's age (a twenty-year-old college student) is a neutral factor.

functioned as a Will, the note was written on lined notebook paper with no apparent regard for whether it complied with any formalities generally accompanying the disposition of property at death. The note was deeply personal and specifically addressed to friends and family. It was not, as Urquhart claims, a "public" or "semi-public" accusation. The note was not directed to law enforcement, nor is there any indication in the note that Amanda contemplated it would find its way into law enforcement hands. It was created in a situation of undoubtedly high stress and vulnerability when Amanda was either contemplating ending her own life or had already made the decision to do so.[8] In sum, we agree with the State's assessment that "[t]he letter was not a legal directive but a heartfelt expression of pain and sorrow and, relative to Urquhart's actions, an expression of anger, grief, and resignation."

¶17 Amanda's writing in this case is easily distinguishable from the statements in, for example, *Jensen*. There, the deceased wife of Mark Jensen made statements and wrote a letter prior to her death suggesting that police should investigate Jensen if she died. *Jensen*, 396 Wis. 2d 196, ¶2. She also left voicemails for a police officer two weeks prior to her death stating that if she were found dead, Jensen should be their first suspect. *Id.* These statements were testimonial under *Crawford v. Washington*, 541 U.S. 36 (2004), as they were objectively intended to be used by police in any subsequent murder investigation—a holding our supreme court recently reaffirmed. *Jensen*, 396 Wis. 2d 196, ¶¶34, 36. By contrast, the note here was not intended as a substitute

---

[8] This is further buttressed by the fact that Amanda made a tearful phone call apologizing to her mother and sister shortly before she overdosed.

for in-court testimony. Urquhart's Confrontation Clause rights were not violated by it being received into evidence.

## II. *Ineffective Assistance of Counsel*

¶18 Urquhart also argues his trial attorney was constitutionally ineffective for failing to further inquire about the jury's inability to hear a portion of Donna's testimony and for failing to object to testimony that the State could not prosecute Urquhart for Amanda's alleged sexual abuse. The Sixth Amendment guarantees a defendant the effective assistance of counsel. *State v. Savage*, 2020 WI 93, ¶27, 395 Wis. 2d 1, 951 N.W.2d 838; *Strickland v. Washington*, 466 U.S. 668, 686-87 (1984). To prevail on an ineffective assistance claim, the defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defendant. *Id.*

¶19 To demonstrate deficient performance, the defendant must show that his or her attorney made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Savage*, 395 Wis. 2d 1, ¶28. We presume that counsel's conduct fell within the wide range of reasonable professional assistance, and we will grant relief only upon a showing that counsel's performance was objectively unreasonable under the circumstances. *Id.* Prejudice is demonstrated by showing a reasonable probability that, but for counsel's unprofessional conduct, the result of the proceeding would have been different. *Id.*, ¶32.

¶20 We review an ineffective-assistance-of-counsel claim using a mixed standard of review. *Id.*, ¶25. The circuit court's factual findings, including those regarding trial counsel's conduct and strategy, will not be overturned unless they are clearly erroneous, but we review de novo whether counsel's conduct

constitutes constitutionally ineffective assistance. ***Id.*** If the defendant fails to establish either prong, we need not address the other. ***Id.***

### A. *Jury's Inability to Hear Donna's Testimony*

¶21 "[I]mplied in the concept of assuring an impartial jury is the presence of jurors who have heard all of the material testimony. The absence of this condition, whether it is due to a hearing deficiency or a state of semi-consciousness, could imperil the guarantees of impartiality and due process." ***State v. Hampton***, 201 Wis. 2d 662, 668, 549 N.W.2d 756 (Ct. App. 1996). How to proceed when confronted with an assertion of jury inattentiveness is a discretionary determination by the circuit court. ***Id.*** at 670.

¶22 Here, after the jury informed the bailiff that they could not hear a portion of Donna's testimony, the circuit court requested that the prosecutor have the victim-witness coordinator confer with her about the need to speak loudly and into the microphone. This apparently addressed the matter going forward, but Urquhart argues his trial counsel was constitutionally required to do more "to correct the error stemming from the jury's inability to hear the victim's testimony."

¶23 We agree with the circuit court that the record fails to establish that counsel performed deficiently in this respect. Urquhart has provided no reason for this court to second-guess the court's observation that Donna was speaking quietly only "during the last few questions before the break." The "cold" transcript before this court is limited in terms of its ability to convey a witness's tone and demeanor. Nonetheless, the trial transcript supports the circuit court's finding on this point to the extent it establishes that the State's questions immediately preceding the break were deeply personal questions about Donna's thoughts and

11

emotions whenever she was asked to talk about the assault. In response to those questions, Donna testified that when asked about the assault, she did not want to say anything because she "spent so long not telling, not wanting anyone to know." Her next reaction if pressed was to "leave and cry," and speaking about the matter in any setting made her "[r]eally anxious" and "scared." It was at that point that the prosecutor requested a break.

¶24 Donna's questioning leading up to that moment was not quite so invasive. Donna discussed her childhood, her family, moving from Texas to Sheboygan, school, and her daily schedule. Donna testified that she and her sister tried to be out of the house as much as possible because they were afraid of Urquhart, and he had threatened them. She briefly talked about her parents' separation, her anxiety and depression, learning of her sister's suicide, and her suicidal ideations and counseling. These general matters, though also personal, clearly did not engender the same emotions as being asked to directly recall and recount the details of a sexual assault by one's parent.

¶25 Urquhart's best argument is that some of Donna's "background" testimony arguably went to the issue of delayed reporting, which was one aspect of the case that his defense wanted to emphasize at trial. But the testimony Urquhart argues his trial counsel should have ensured the jury heard all occurred on direct examination by the State. In response to questioning about why she kept the assault to herself for so long, Donna confirmed that for years she had not told her family, including her sisters, what Urquhart had done to her. She explained that she believed the assault was her problem, she was scared, and she thought it was "safer just not to tell anybody." This testimony was largely repetitive of what other witnesses at trial testified Donna had told them. As a result, even if we were to assume the jury could not hear this portion of Donna's testimony, Urquhart has

12

failed to establish that the jury did not hear all material testimony. In addition, he has failed to demonstrate a reasonable probability of a different result, as he fails to explain how the *absence* of Donna's own explanation for delayed reporting inured to the State's benefit.

¶26 In sum, the trial transcript supports the circuit court's determination that only a few responses during Donna's testimony were too quiet to hear, as well as the court's companion finding that the matters to which Donna testified during the challenged portion of her testimony were general background matters and not "material" testimony to the allegation against Urquhart. Following the admonition to speak up, Donna provided extensive testimony regarding the details of the unwanted touching and sexual intercourse. The jury had ample opportunity to evaluate Donna's credibility during that testimony, which spans more than thirty transcript pages. As a result, Urquhart has failed to establish both deficient performance and prejudice in his trial attorney's handling of the quiet portion of Donna's testimony.

### B. Testimony About the Lack of Prosecution for Amanda's Allegations

¶27 Urquhart next argues his trial attorney was constitutionally ineffective for failing to object to the testimony about law enforcement's inability to prosecute Urquhart for the sexual assaults alleged in Amanda's suicide note. He argues this testimony was irrelevant, inadmissible, and prejudicial. In Urquhart's view, the testimony created a substantial danger that the jury convicted him of the present offense because it believed he had evaded prosecution for Amanda's sexual assault by her suicide.

¶28 The State, on the other hand, argues the testimony was both relevant and not prejudicial because it placed the suicide note in context and explained that

there was no follow-up investigation by police. This, in the State's view, "eliminated any jury speculation about whether Urquhart was charged with sexually assaulting [Amanda]." The State therefore regards the lack of an objection as reasonable trial strategy.

¶29 We agree with the State. It correctly observes that "Urquhart fails to explain why it was better for his defense that the jury be kept in the dark about what happened after [Amanda]'s accusations came to light." Absent this evidence, the jury might have assumed that Urquhart *had* been prosecuted and/or convicted, which had the potential to be far more prejudicial than what actually occurred. As it stands, counsel's performance assured that the jury knew there had been no investigation into the matter and no effort to bring charges against Urquhart based on Amanda's allegations.

¶30 Urquhart curiously argues the alleged prejudice stemming from trial counsel's failure to object was exacerbated by the lack of "a limiting instruction pertaining to the suicide note." The factual basis for this argument is unclear. Again, the jury was instructed that evidence had been presented that Urquhart was "alleged to have sexually assaulted" Amanda, and it was to consider that evidence "only on the issues of opportunity, motive, intent, absence of mistake or accident," and for context or background—each of which purpose the court then specifically described. The jury was cautioned not to consider Amanda's allegations as evidence of Urquhart's character. Based upon the record here, we cannot perceive any constitutional deficiency with respect to trial counsel's handling of the information that police did not investigate or prosecute Urquhart for Amanda's allegations of abuse.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.