COURT OF APPEALS
DECISION
DATED AND FILED

October 25, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2021AP1424-CR**

**STATE OF WISCONSIN**

Cir. Ct. No. 2019CF1411

**IN COURT OF APPEALS
DISTRICT I**

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

SANCHEZ WILSON,

DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Milwaukee County: JOSEPH R. WALL, Judge. *Affirmed*.

Before Donald, P.J., Dugan and White, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Sanchez Wilson appeals a judgment of conviction entered after a jury found him guilty of first-degree sexual assault of a child, first-degree reckless injury while using a dangerous weapon, and possessing a firearm while a felon. D.S.M., a six-year-old girl, was the victim of both the sexual assault and the reckless injury. On appeal, Wilson argues that the circuit court erred by permitting the jury to hear evidence that D.S.M.'s oral swab, taken approximately twelve hours after the alleged sexual assault, revealed the presence of DNA from an unidentified male. We reject Wilson's arguments. Therefore, we affirm.

## Background

¶2 D.S.M. told her mother on March 29, 2019, that Wilson, an adult member of the household, had put his penis into D.S.M.'s mouth that morning during breakfast. While D.S.M. was talking to her mother about the assault, Wilson began arguing with another person, and during a subsequent exchange of gunfire, he shot D.S.M.

¶3 D.S.M. was brought to the hospital. Her mouth was swabbed for DNA approximately twelve hours after the alleged assault. The swab revealed the presence of male DNA, the source of which could not be identified with any greater specificity. Wilson moved to exclude that DNA evidence as irrelevant and unfairly prejudicial, but the circuit court denied the motion.

¶4 At trial, a DNA analyst, Emily Schmitt, testified that she found male DNA on the oral swab from D.S.M.'s mouth and that foreign DNA can remain in a mouth for approximately twenty-four hours. Schmitt went on to testify that the limited amount of DNA present on the swab did not permit her to identify the male person or persons who sloughed off the DNA, or to determine the biological

material that might have carried the DNA, nor was the amount of DNA sufficient to allow further testing.

¶5 The jury also heard testimony from numerous other witnesses. D.S.M. described how she was sexually assaulted and then shot. Members of her family testified about her sexual assault disclosure on March 29, 2019, and the surrounding events, including the subsequent shooting. Wilson testified on his own behalf and denied sexually assaulting D.S.M., but he admitted that a gun in his hand discharged that day, and he conceded that he apparently shot D.S.M. as a result. Wilson additionally stipulated that he had previously been convicted of a felony and that the conviction had not been reversed as of the day of the shooting.

¶6 The jury found Wilson guilty of the three charges he faced, namely, first-degree sexual assault of a child, first-degree reckless injury while using a dangerous weapon, and possessing a firearm while a felon. He appeals, challenging the circuit court's decision to admit the DNA evidence developed from D.S.M.'s oral swab and asserting that admission of that evidence deprived him of a fair trial.

**Discussion**

¶7 The decision to admit or exclude evidence rests in the circuit court's discretion. *See State v. Pharr*, 115 Wis. 2d 334, 342, 340 N.W.2d 498 (1983). Our review is highly deferential. *See State v. Shomberg*, 2006 WI 9, ¶11, 288 Wis. 2d 1, 709 N.W.2d 370. We will uphold a discretionary decision admitting or excluding evidence if the circuit court "examined the relevant facts, applied a proper legal standard, and, using a demonstrated rational process, reached a reasonable conclusion." *State v. Gutierrez*, 2020 WI 52, ¶21, 391 Wis. 2d 799, 943 N.W.2d 870 (citation omitted). Conversely, "[w]e will not find an erroneous exercise of

discretion if there is a rational basis for a circuit court's decision." ***Shomberg***, 288 Wis. 2d 1, ¶11 (citation omitted).

¶8 Well-settled principles guide a circuit court's discretionary decision to admit or exclude evidence. "To be admissible at trial, evidence must be relevant." ***State v. Petrovic***, 224 Wis. 2d 477, 493, 592 N.W.2d 238 (Ct. App. 1999). Relevant evidence is evidence that tends "to make the existence of any fact that is of consequence to the determination of the action more probable or less probable[.]" *See* WIS. STAT. § 904.01 (2019-20).[1] Relevant evidence is generally admissible, *see* WIS. STAT. § 904.02, but relevant evidence may be excluded when, *inter alia*, its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. *See* WIS. STAT. § 904.03.

¶9 In this case, Wilson asserts that the circuit court erroneously exercised its discretion by admitting evidence that male DNA from an unidentifiable source was found in D.S.M.'s mouth. He contends that the evidence was irrelevant and that any relevance the evidence might arguably have had was "greatly outweighed" by the risk of unfair prejudice and misleading the jury.

¶10 The circuit court considered Wilson's claim that the DNA evidence developed from the oral swab was irrelevant because DNA analysis could not determine the source of the DNA or exclude Wilson as a contributor. The circuit court determined, however, that evidence about DNA analysis would address jurors' expectations that sexual assault investigations will include DNA testing. The circuit court observed that evidence of such testimony is often presented "even when the test is negative," to explain the limits of such evidence and to clarify the reasons

---

[1] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

why definitive DNA evidence was not found. Thus, the circuit court determined that the DNA evidence was relevant to the jury's assessment of the police investigation into D.S.M.'s claim.

¶11    On appeal, Wilson asserts that the circuit court's analysis of relevancy lacked a "legal basis." To the contrary, this court has previously recognized that investigative steps, including swabbing and testing items of evidence, may be relevant to an assessment of the criminal investigation. *See **State v. DelReal***, 225 Wis. 2d 565, 575, 593 N.W.2d 461 (Ct. App. 1999). Discussing negative gunshot residue test results in **DelReal**, we concluded that the fact of the testing and the fact that the test results were negative carried "some weight" in regard to the quality of the investigation and the credibility of its lead investigator. *See **id.*** Other courts have reached a similar conclusion. *See **Chaparro v. State***, 497 P.3d 1187, 1194 (Nev. 2021) (holding that "[i]nconclusive results ... may be relevant to show the jury the thoroughness of the steps taken by law enforcement in order to investigate the victim's account"); **Clark v. State**, 96 A.3d 901, 907 (Md. Ct. Spec. App. 2014) (explaining that inconclusive DNA test results may be relevant to show that the State performed a DNA test because, "without that evidence the defense could argue that the State had not performed a DNA analysis ... that, if performed, could have ruled out the [accused]").

¶12    Indeed, in this case, Wilson's closing argument urged the jury to consider whether certain questions gave it pause, including: "why wasn't [Wilson's] DNA found? Why wasn't there sperm found in [D.S.M.'s] mouth?" The DNA analysis was evidence that the jury could use to assess those inquiries and to determine whether the absence of conclusive DNA results reflected an untrustworthy investigation or merely demonstrated the limits of DNA analysis.

5

Accordingly, we are satisfied that the circuit court properly exercised its discretion in analyzing the relevance of the DNA evidence.

¶13    Moreover, the record reflects a second basis on which to conclude that the DNA evidence was relevant.  *See Gutierrez*, 391 Wis. 2d 799, ¶27 (explaining that a reviewing court will search the record for reasons to uphold a circuit court's exercise of discretion).  Because D.S.M. alleged that Wilson put his penis in her mouth, the discovery of male DNA on her oral swab was relevant to an assessment of whether Wilson sexually assaulted her in the way that she claimed.

¶14    Our conclusion in this regard follows from the application of familiar rules governing relevancy determinations.  Evidence is relevant if it has "any tendency" to make a fact of consequence more or less probable.  *See* WIS. STAT. § 904.01.  The threshold is low.  *See State v. Richardson*, 210 Wis. 2d 694, 707, 563 N.W.2d 899 (1997).  Thus, "[a]ny tiny increase or decrease in the probability of a fact of consequence 'does the trick,' no matter how slightly incremental." *State v. Sarfraz*, 2014 WI 78, ¶42 n.8, 356 Wis. 2d 460, 851 N.W.2d 235 (citation omitted).    Here, medical personnel swabbed D.S.M.'s mouth for DNA approximately twelve hours after Wilson allegedly put his penis in D.S.M.'s mouth. Expert testimony established that foreign DNA may remain in a mouth for up to twenty-four hours.  Discovery of male DNA in D.S.M.'s mouth during the twenty-four-hour period following the alleged assault is therefore consistent with D.S.M.'s allegation.  We readily conclude that such a discovery tends to make that allegation more probable, even though scientific testing could not identify the source of the DNA.

¶15    We observe that the Nebraska Supreme Court recently concluded that evidence of male DNA on a sexual assault victim's genital area was relevant even

though the DNA analyst could not identify the person who deposited that DNA. *See State v. Wood*, 966 N.W.2d 825, 857-58 (Neb. 2021). The ***Wood*** court explained that the male DNA increased the probability that the victim truthfully described a sexual assault involving her genital area. *See **id.*** Similarly here, the presence of male DNA on D.S.M.'s oral swab contributed to the probability that D.S.M. made a truthful accusation even though DNA analysis did not show that Wilson was the source of the male DNA.

¶16 We turn, then, to the question of whether the circuit court reasonably balanced the probative value of the DNA evidence against the danger of unfair prejudice. *See* WIS. STAT. § 904.03; *see also **Gutierrez***, 391 Wis. 2d 799, ¶22. In resolving that question, we keep in mind that "[t]he standard for unfair prejudice is not whether the evidence harms the opposing party's case[.]" *See **State v. Payano***, 2009 WI 86, ¶89, 320 Wis. 2d 348, 768 N.W.2d 832 (citation omitted). Rather:

> Unfair prejudice results when the proffered evidence has a tendency to influence the outcome by improper means or if it appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish or otherwise causes a jury to base its decision on something other than the established propositions in the case.

*Id.* (citation omitted). A party contending that relevant evidence should be excluded as unfairly prejudicial must show that the probative value of that evidence was "substantially outweighed" by the danger of unfair prejudice. *See **Gutierrez***, 391 Wis. 2d 799, ¶22 (citation omitted).

¶17 According to Wilson, the DNA evidence at issue here unfairly prejudiced him because "the jury could have been misled into thinking that the unidentified male DNA was Wilson's and/or infer that the unidentified male DNA

could have only been deposited from the alleged sexual assault." Wilson's concerns are not supported by the record.

¶18    The circuit court determined in its pretrial ruling that the probative value of the DNA evidence would not be outweighed by the danger of unfair prejudice because the evidence would be limited and the defense would be able to explore the various innocuous reasons that foreign DNA might be found in D.S.M.'s mouth. The record shows that, in fact, Schmitt testified at trial that she was "not able to draw any further conclusions" beyond her determination that a small amount of male DNA was present on D.S.M.'s oral swab. Schmitt went on to confirm that she did not know who deposited the male DNA, could not determine the biological source, and that the amount of DNA present was not suitable for further testing. She also conceded that male DNA could have transferred into D.S.M.'s mouth during medical treatment or through contact with D.S.M.'s brothers. Under the facts here, the circuit court could reasonably conclude that the DNA evidence would not improperly influence the outcome of the trial because the jury would not misunderstand the probative value of the evidence.

¶19    Wilson, however, directs our attention to *Gutierrez*, contending that the opinion in that case mandates reversal here. In *Gutierrez*, our supreme court upheld a circuit court's discretionary decision to exclude evidence of male DNA that was found on a sexual assault victim when the source of the DNA was not otherwise identified. *Id.*, 391 Wis. 2d 799, ¶¶20, 27. Wilson lists various factors that the circuit court in *Gutierrez* considered when excluding the DNA evidence. Wilson views the considerations as similar in his case and concludes that the outcome in the two cases should be the same.

¶20 Wilson misunderstands the thrust of *Gutierrez*. In that case, like this one, the circuit court was required to determine whether, under the particular facts before it, the probative value of DNA evidence was substantially outweighed by competing considerations. *See id.*, ¶¶21-27. That case, like this one, required a reviewing court later to examine the circuit court's analysis and assess whether it reflected a proper exercise of discretion. *See id.*, ¶20. The standard of review in that case, like the standard of review here, required the appellate court to defer to the circuit court's determination if the circuit court reached a reasonable conclusion using a demonstrated rational process. *See id.*, ¶21.

¶21 As *Gutierrez* instructs, this court has examined the circuit court's exercise of discretion. We are satisfied that the circuit court properly conducted the applicable balancing test and reasonably concluded that the DNA evidence offered here was relevant and should be admitted because its probative value was not substantially outweighed by competing concerns. While this court might have exercised discretion differently, this court "may not substitute its discretion for that of the circuit court." *Id.*, ¶27 (citation omitted). Accordingly, we affirm the decision of the circuit court.[2]

> *By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[2] The State argues that if the circuit court erred in admitting the DNA evidence, then the error was harmless. Because we conclude that the circuit court properly exercised its discretion, we will not consider that argument. *See State v. Hughes*, 2011 WI App 87, ¶14, 334 Wis. 2d 445, 799 N.W.2d 504 (explaining that we resolve cases on the narrowest possible ground).