COURT OF APPEALS
DECISION
DATED AND FILED

February 13, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.    2022AP1837-CR**

**STATE OF WISCONSIN**

Cir. Ct. No.  2019CF531

**IN COURT OF APPEALS
DISTRICT I**

STATE OF WISCONSIN,

      PLAINTIFF-RESPONDENT,

  V.

THOMAS EDWARD DORNBROOK,

      DEFENDANT-APPELLANT.

---

APPEAL from a judgment and an order of the circuit court for Milwaukee County:  JEFFREY A. WAGNER, Judge.  *Affirmed*.

Before White, C.J., Donald, P.J., and Geenen, J.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.    Thomas Edward Dornbrook was convicted by a jury of incest and first-degree sexual assault of a child under age thirteen.  Dornbrook

argues: (1) his trial counsel was deficient for not objecting to hearsay evidence from a detective; (2) the circuit court erroneously admitted hearsay evidence from two school employees; and (3) he is entitled to a new trial in the interest of justice under WIS. STAT. § 752.35 (2021-22).[1]

¶2 We reject Dornbrook's arguments and conclude: (1) Dornbrook failed to show that he suffered prejudice as a result of trial counsel's failure to object to the detective's testimony; (2) the State proved beyond a reasonable doubt that the school employees' testimony was harmless; and (3) Dornbrook is not entitled to a new trial under WIS. STAT. § 752.35. Accordingly, we affirm his judgment of conviction and the order denying postconviction relief.

### BACKGROUND

¶3 A jury convicted Dornbrook of incest and first-degree sexual assault of a child under age thirteen. The charges were based on allegations by T.S., Dornbrook's twelve-year-old biological daughter, that Dornbrook sexually assaulted her during a visit to his home. T.S. lived with her adoptive mother and father. Prior to the alleged sexual assault, T.S. had not seen Dornbrook in over nine years, since she was three years old. T.S. spoke with her biological mother, J.S., weekly. Evidence recovered during the police investigation showed that in January 2019, T.S. and Dornbrook had been communicating via text message, phone, and video chat, including via the Skype video chat and messaging platform. There is no dispute that in late January 2019, despite not seeing Dornbrook for over nine years, T.S. visited Dornbrook at his home on a day off from school.

---

[1] All references to the Wisconsin Statutes are to the 2021-2022 version unless otherwise noted.

¶4      At trial, the State presented evidence from several witnesses, including testimony from two employees at T.S.'s school. Tracy Christopher, a secretary at T.S.'s middle school, stated that on February 1, 2019, T.S. approached her and told her that she had gone to Dornbrook's house, that Dornbrook was wearing a pink bra when she arrived, that Dornbrook asked T.S. to have sex with him, that she said okay and they had sex, and that he played with her feet afterward and told her to take a pregnancy test. Christopher said that she sent T.S. to Felischa Booker, the school paraprofessional, and called the police. Booker also testified that T.S. told her that she had sex with Dornbrook. According to Booker, T.S. told her that she went to Dornbrook's house, he took her to his bedroom, and he had sex with her, and that after, Dornbrook told T.S. to clean up in the bathroom, take a pregnancy test, and to not tell anyone. Dornbrook's counsel raised hearsay objections to Christopher's and Booker's testimony describing what T.S. told them. The trial court overruled the objections.

¶5      T.S. testified[2] that after she arrived at Dornbrook's house, he took her to his bedroom, told her to get on the bed, told her "we're going to go have sex," and had sex with her by "put[ting] his private in my private," and that after, Dornbrook played with her feet, told her to take a shower, and gave her a pregnancy test. T.S. said that "white stuff" came out of his private part and that Dornbrook told her not to tell anyone, or he would "come to my house and kill my parents and me." T.S. acknowledged that she told some "teachers" at school because they are "good people." The school contacted the police, and T.S. told Detective Andrew Marx about the assault. Though she initially testified that Dornbrook was

---

[2] The record reflected that T.S. had significant difficulty testifying. During her testimony, T.S. stated that it was difficult to talk about the assault, and at times, chose to write out the answers to questions.

wearing a shirt and pants when she arrived at his house, T.S. later acknowledged that her previous testimony was incorrect and that, as she told Detective Marx, Dornbrook was wearing a pink bra.

¶6 T.S.'s biological mother, J.S., testified that T.S. told her that Dornbrook sexually assaulted her soon after it happened, but before T.S. talked to Christopher and Booker. T.S. also told J.S. about the text messages Dornbrook had sent her. Prior to interviews with police about the assault, J.S. wrote down some of the details of the texts that T.S. received from Dornbrook, including Dornbrook asking if T.S. wanted to have sex with him, Dornbrook saying he wanted to kiss T.S.'s feet, and Dornbrook stating that he would not rape T.S. "unless [T.S.] wants [him] to rape" her.

¶7 Detective Marx testified about his interview with T.S, during which she told him that Dornbrook was wearing tan pants and a pink bra when she arrived at his house, that Dornbrook had "put his private part in her private part," and that "white stuff" came out of Dornbrook's private part. In the interview, T.S. accurately described details of Dornbrook's bedroom to Detective Marx, e.g., that it had a carpet, a street-facing window, and a wall-mounted TV, and provided details about sexually explicit messages she had received from Dornbrook stating that he liked wearing women's underwear and using adult diapers. In a search of Dornbrook's bedroom, Detective Marx found two pink bras, tan pants, and adult diapers.

¶8 Detective Jorge Suarez testified about his interviews with Dornbrook. He testified that Dornbrook talked about T.S. being "beautiful," "very beautiful," and "attractive," and admitted that he was sexually attracted to T.S. Although Dornbrook denied having sex with T.S., he admitted that he masturbated to thoughts

of her. Dornbrook also acknowledged wearing women's underwear and adult diapers.

¶9 Another witness, Detective Eric Draeger, testified that police recovered Skype text messages between Dornbrook and T.S. and that, in those messages, Dornbrook said that he wanted to kiss T.S. with "[d]eep gentle" passionate kisses and told her he would kiss her feet if she asked him to; he talked about having sex with T.S. and indicated that he would not have sex with her "unless [she] want[ed] to;" he asked to touch T.S.'s butt when they kissed; among other sexualized comments. At one point, T.S. texted Dornbrook asking whether he was going to "rape" her, and he responded no, that he "only rape[s] with consent[.]"

¶10 Dornbrook's mother, Joyce, testified that she lived with Dornbrook and was home on the day that T.S. came over. She said that T.S. and Dornbrook were on the computer in the living room the entire time and never went into Dornbrook's bedroom. Joyce acknowledged that Dornbrook wore women's clothes at home, including bras.

¶11 Christopher Schlut testified that he had known Dornbrook for more than thirty-six years and that the two used Skype to video chat with each other six to twelve hours per day. Schlut said that he was Skyping with Dornbrook from about 1:00 p.m. to 8:30 p.m. on the day that T.S. visited Dornbrook, beginning about an hour after T.S. arrived. He claimed that, through the Skype connection, he could see that Dornbrook's bedroom door was closed the entire time and that he never saw Dornbrook or T.S. go in.

¶12 Dornbrook also testified and denied sexually assaulting T.S. He claimed that he sat in his chair in front of his computer in the living room for four hours, without getting up, while T.S. was visiting him. He said that he only told

Detective Suarez that he was sexually attracted to T.S. because the detective was being pushy. Dornbrook denied that he made gestures during his interview indicating that he masturbated to thoughts of T.S. When confronted with a portion of the interview where Dornbrook told Detective Suarez that he was sexually attracted to T.S., made masturbatory gestures, and acknowledged in the interview that he was mimicking "jack[ing] off," Dornbrook claimed that he was talking about masturbating to other women. Dornbrook also explained away the sexually explicit Skype messages by claiming that they were taken out of context and that he was trying to protect T.S. by teaching her what she should watch out for from "bad men."

¶13 The jury found Dornbrook guilty of first-degree sexual assault of a child under age thirteen and incest. The circuit court sentenced him to a total of sixteen years of initial confinement and ten years of extended supervision. Dornbrook filed a postconviction motion arguing that his trial counsel was ineffective for not raising a hearsay objection to Detective Marx's testimony explaining what T.S. told him about the sexual assault. The postconviction court denied the motion without a hearing because Dornbrook did not demonstrate that he was prejudiced as a result of trial counsel's failure to object to Detective Marx's testimony. In its written decision, the postconviction court also found that T.S.'s testimony was "credible, persuasive, and corroborated by other circumstantial evidence ...."

¶14 Dornbrook appeals, challenging the postconviction court's denial of his ineffective assistance of counsel claim concerning counsel's failure to object to Detective Marx's testimony and the circuit court's decision overruling his counsel's hearsay objections to Christopher's and Booker's testimony.

**DISCUSSION**

## I.    Dornbrook's Ineffective Assistance of Counsel Claim Fails.

¶15    Dornbrook claims that his trial counsel was ineffective for failing to object to Detective Marx's testimony.  Specifically, Dornbrook argues that Detective Marx's testimony regarding statements that T.S. made to him constituted inadmissible hearsay that impermissibly bolstered T.S.'s account of the sexual assault.  We reject Dornbrook's argument because even if trial counsel's failure to object constituted deficient performance, Dornbrook failed to show that he suffered prejudice as a consequence.

¶16    A defendant claiming ineffective assistance of counsel must prove both that counsel's performance was deficient and that the defendant suffered prejudice as a result of that deficient performance. *State v. Reinwand*, 2019 WI 25, ¶¶40, 42, 385 Wis. 2d 700, 924 N.W.2d 184.  Courts need not address both components if the defendant makes an insufficient showing on one. *Strickland v. Washington*, 466 U.S. 668, 697 (1984).  Because we reject Dornbrook's claim based on his failure to demonstrate prejudice, we need not and do not address whether trial counsel's performance was deficient.

¶17    To prove prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*   Whether a defendant was prejudiced by counsel's performance is a question of law that we review independently. *Reinwand*, 385 Wis. 2d 700, ¶18.

¶18    Our review of the record convinces us that there is not a reasonable probability that the result of the trial would have been different had counsel objected to Detective Marx's testimony.  Therefore, even if the admission of the evidence was erroneous and trial counsel performed deficiently by not objecting, Dornbrook suffered no prejudice.  Accordingly, his ineffective assistance of counsel claim fails.

¶19    First, we emphasize that the State's case against Dornbrook was overwhelmingly strong.  T.S. testified regarding the details of her sexual assault, and as the circuit court noted, her testimony was "credible, persuasive, and corroborated by other circumstantial evidence[.]"  She accurately described details of Dornbrook's bedroom, and described a pink bra which Dornbrook was allegedly wearing when she arrived at his house.  Detective Marx later discovered two pink bras in Dornbrook's bedroom.  Dornbrook sent multiple sexually explicit messages to T.S. telling her that he wanted to passionately kiss her lips and feet, touch her butt, and that he would only "rape" her if she wanted him to.  Some of the messages were fetishistic with respect to wearing and using diapers, and Detective Marx found adult diapers in Dornbrook's bedroom.  Dornbrook also admitted to Detective Suarez that he was sexually attracted to T.S. and that he masturbated to thoughts of her.

¶20    In contrast, Dornbrook's defense was weak.  The jury's verdict indicates that it did not find Dornbrook's explanations for his inculpatory statements and messages credible.  Moreover, even if the Detective Marx's testimony was excluded, T.S. still testified about the details of the assault, and the fact that she told trusted adults about the assault shortly after it occurred would have been admitted through both T.S. and J.S.

8

¶21    In sum, even if Detective Marx's testimony had been excluded, the unchallenged evidence shows that Dornbrook admitted that he was sexually attracted to his daughter; he masturbated to thoughts of her and sent her sexually explicit messages including implying that he would have sex with her; T.S. identified a pink bra that was later discovered in Dornbrook's bedroom and accurately described details of the interior of Dornbrook's bedroom despite never having seen it before the day of the assault; T.S. told her biological mother and two adults at school about the assault not long after it occurred; and T.S. gave compelling testimony describing the details of the assault.  There is no reasonable probability that the result of the trial would have been different if trial counsel had objected to Detective Marx's testimony.  Accordingly, we reject Dornbrook's argument that trial counsel was ineffective for failing to object to Detective Marx's testimony.

## II.    The Admission of the Testimony of Christopher and Booker Was Harmless.

¶22    Similar to his ineffective assistance claim, Dornbrook argues that the circuit court erred by overruling his hearsay objections to Christopher's and Booker's testimony regarding statements T.S. made to them, impermissibly bolstering T.S.'s account of the sexual assault.  We reject Dornbrook's argument because the State proved beyond a reasonable doubt that the admission of the challenged testimony, even if erroneous, was harmless.[3]

¶23    For an error to be harmless, the party benefitting from it (here, the State) must demonstrate that it is "clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error." *State v. Harvey*, 2002

---

[3] Because we conclude that Dornbrook's claimed errors were harmless, we do not reach the substance of his hearsay arguments related to the admissibility of the challenged testimony. *See State v. Blalock*, 150 Wis. 2d 688, 703, 442 N.W.2d 514 (Ct. App. 1989) ("[C]ases should be decided on the narrowest possible ground[.]")

WI 93, ¶49, 254 Wis. 2d 442, 647 N.W.2d 189 (citation omitted). While "harmless error is not subject to a precise mathematical formula," *State v. Monahan*, 2018 WI 80, ¶63, 383 Wis. 2d 100, 913 N.W.2d 894, multiple non-exhaustive factors may assist the analysis, including: the prevalence and importance of the erroneously admitted evidence, the presence or absence of evidence corroborating or contradicting the erroneously admitted evidence, the nature and strength of the defense, and the nature and strength of the State's case, *State v. Hunt*, 2014 WI 102, ¶27, 360 Wis. 2d 576, 851 N.W.2d 434. The standard is "essentially consistent" with the standard for prejudice in ineffective assistance of counsel cases, the difference being that the State bears the burden of proof, unlike that under *Strickland*, where the defendant bears the burden of proof. *Harvey*, 254 Wis. 2d 442, ¶41. Whether an error was harmless is a question of law we review independently. *State v. Beamon*, 2011 WI App 131, ¶7, 336 Wis. 2d 438, 804 N.W.2d 706.

¶24 We conclude that the State proved beyond a reasonable doubt that the admission of Christopher's and Booker's testimony was harmless, both individually and when considered cumulatively with each other and the admission of Detective Marx's testimony. As summarized above, the evidence of guilt was overwhelming, including an extraordinarily inculpatory interview with Dornbrook, sexually explicit messages from him to T.S., and credible testimony from T.S., detectives, and others. In contrast, Dornbrook's defense was particularly weak, positing incredible explanations for the evidence against him that the jury clearly did not believe.

¶25 In sum, the challenged testimony was neither prevalent nor of great importance, there was ample evidence corroborating the testimony, the State's case was very strong, and the defense was very weak. *See Hunt*, 360 Wis. 2d 576, ¶27.

10

Accordingly, we conclude the State demonstrated beyond a reasonable doubt that the admission of Christopher's and Booker's testimony was harmless, individually and cumulatively.

### III. Dornbrook is not entitled to a new trial in the interest of justice under WIS. STAT. § 752.35.

¶26    Under WIS. STAT. § 752.35, we may order discretionary reversal for a new trial where:  (1) the real controversy has not been tried, or (2) there has been a miscarriage of justice.  *Vollmer v. Luety*, 156 Wis. 2d 1, 19, 456 N.W.2d 797 (1990).  Dornbrook argues that the real controversy was not tried, and discretionary reversal on this basis does not require a finding of a "probability of a different result on retrial[.]"  *State v. Hicks*, 202 Wis. 2d 150, 160, 549 N.W.2d 435 (1996). Nonetheless, we "approach[] a request for a new trial with great caution" and will exercise discretionary power "only in exceptional cases."  *Morden v. Continental AG*, 2000 WI 51, ¶87, 235 Wis. 2d 325, 611 N.W.2d 659.

¶27    Dornbrook's argument under WIS. STAT. § 752.35 is wholly duplicative of his arguments related to the testimony of Christopher, Booker, and Detective Marx, which we rejected.  There is no additional argument nor is there any explanation with respect to why Dornbrook's case is "exceptional" for purposes of § 752.35.  Accordingly, we reject Dornbrook's request for a new trial in the interest of justice for the same reasons we rejected the underlying arguments.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)5.

11